JAMES F. McKAY III, Judge.
|, This case involves several consolidated appeals. At the heart of case is a dispute between a sub-lessor and a sub-lessee. The principal action giving rise to all of the appeals is an eviction proceeding. For the following reasons, we affirm in part and reverse in part.
FACTS AND PROCEDURAL HISTORY
Sometime around 1860, the building which housed the D.H. Holmes Department Store located at 800 Canal Street in New Orleans was built. In the 1980’s Dillard’s Department Store acquired D.H. Holmes. Later that decade, Dillard’s donated the building to the City of New Orleans. The City formed a public benefit company, Canal Street Development Corporation, to accept the donation on behalf of the City.
In 1989, Canal Street Development Corporation leased its interest in the building to Historic Restoration, Inc. (HRI). HRI later assigned its interest in the property to 800 Canal Street Limited Partnership, which it controlled as a general partner. The greater part of the property was redeveloped as a hotel. On January 1226, 1998, 800 Canal Street sub-leased another por *961 tion of the property to Storyville New Orleans District, LLC, which was owned and operated by Arthur Q. Davis and Quint Davis. The sub-lease required that the leased property “shall only be used” as an entertainment lounge and restaurant of “quality and character similar to or consistent with that of the Hotel.” The sublease also prohibited any form of “adult oriented entertainment”, “striptease”, or “burlesque-style” entertainment. Story-ville then operated a jazz and entertainment lounge at the leased property until near the end of 2002.
On February 2, 2002, Storyville, with the consent of 800 Canal Street, sub-leased the premises to Bourbon Street Management, LLC. On that same date, Bourbon Street Management sub-leased spaces F and G of the premises to Jazz Parlor, LLC. Space H was sub-leased to Howl at the Moon New Orleans, LLC. Bourbon Street Management, Jazz Parlor, and Howl at the Moon New Orleans were all owned, operated, and managed by Jacques Chrysoc-hoos or entities connected to him. Howl at the Moon continued to operate at the location until shortly after Hurricane Katrina.
After the hurricane, Howl at the Moon was converted to The Bourbon Cowboy Bar and Saloon. The Bourbon Cowboy was a western-themed (one might say Wild West) venue with a mechanical bull.[1] Thereafter, a somewhat different atmosphere prevailed on the leased premises. There were instances where topless | ¡¡female patrons rode the mechanical bull and “shot-girls” employed by the bar straddled male patrons in order to entice them to buy shots of liquor.
In September of 2009, 800 Canal Street and HRI tried unsuccessfully to re-acquire the leasehold from Storyville. 800 Canal Street then attempted to evict Storyville and the sub-tenants. On October 7, 2009, 800 Canal Street sent a first notice of default to Storyville[2], alleging that women had exposed their breasts in the leased premises while riding the mechanical bull. 800 Canal Street contended that: such conduct was violative of the lease; was not of the same “character and quality” of the adjoining hotel; and may be “burlesque” activity that may have been violative of state and local laws. 800 Canal Street also contended that the bull itself was a violation of the lease.
On December 8, 2009, 800 Canal Street filed a petition for eviction, alleging that the conduct in the leased premises was violative of the lease between 800 Canal Street and Storyville. On the next day, Storyville filed a petition seeking declaratory and injunctive relief in an effort to protect its interests and to stop 800 Canal Street’s eviction action. A trial on the eviction was held on January 29, 2010 and February 1, 2010. In open court, on February 25, 2010, the trial court issued a ruling denying 800 Canal Street’s petition for eviction. On February 26, 2010, the trial court signed an order dismissing 800 Canal Street’s eviction suit but ordered the removal of the mechanical bull. The court found that the bull constituted a violation of the Comprehensive Zoning Ordinance of the City of New |4Orleans and a violation of the sub-lease agreement between 800 Canal Street and Storyville. The trial court then ruled that Storyville had thirty (30) days from February 25, 2010 to cure the violation according to the sub-lease agreement. The court also dismissed Sto-ryville’s petition for permanent injunction, *962 preliminary injunction, temporary restraining order and declaratory judgment which was pending based upon an exception of lis pendens previously filed by 800 Canal Street. In compliance with the trial court’s order, the mechanical bull was removed. In March 2010, both parties filed cross motions for attorney fees based upon the lease provisions which provide attorney fees to the successful litigant. The trial court denied both motions for attorney fees.
Both 800 Canal Street and Storyville have appealed from the trial court’s judgment in the eviction proceedings. 800 Canal Street has also answered Storyville’s appeal. Both 800 Canal Street and Story-ville also appeal the trial court’s denial of their respective motions for attorney fees. All of these appeals have been consolidated.[3]
DISCUSSION
On appeal, 800 Canal Street raises the following assignments of error: 1) the district court erred by finding that Storyville did not breach its sub-lease with 800 Canal Street by ordering that the leased property was “the same quality of the Hotel” but “did not rise to the level of Luxury” of the hotel; 2) the district court erred by finding that the indecent and lewd activity encouraged by Storyville did | Bnot violate Section 2.01(C) of the sub-lease, which restricted “Burlesque-type,” “striptease,” and “adult entertainment” acts, based on the district court’s erroneous finding the intent of such provision was to prevent the operation of a strip club; and 3) the district court erred by not awarding 800 Canal Street with attorneys’ fees and expenses under the sub-lease even though 800 Canal Street established a breach by Storyville, and the district court expressly recognized the breach in its judgment. Storyville raises the following assignments of error: 1) the trial court committed legal error in ordering that the mechanical bull in the leased premises had to be removed; 2) the trial court committed legal error in denying Storyville and the sub-tenants attorney fees; and 3) the trial court committed legal error in granting 800 Canal Street’s exception of Us pendens.

Quality of the Property

In its oral reasons for judgment, the trial court found that Storyville did not breach its sub-lease with 800 Canal Street because the leased property was of the “same quality of the hotel” but “did not rise to the level of ‘luxury’ of the hotel.” The sub-lease between the parties relative to the premises in question stated that it should be of “character and quality similar to and consistent with the hotel” and that the immediately previously quoted language would be “hereinafter defined.” However, it was not defined. This Court has held that “dissolution of a lease is not favored in our law and ambiguity in the lease must be construed in the lessee’s favor.” System Fuels, Inc. v. International Tank Terminals, Ltd., 435 So.2d 470 (La.App. 4 Cir.1983).
|fiIn the instant case, in reaching its factual conclusion, the trial court viewed photographic evidence and visited both the hotel and the Bourbon Cowboy. The trial court’s oral reasons for judgment concerning its visits to the site were quite detailed. Accordingly, we find nothing manifestly erroneous in the trial court’s findings regarding the quality of the premises nor with its ruling regarding the breach on those grounds.

*963
Adult Entertainment

In its second assignment of error, 800 Canal Street contends that the district court erred by finding that the indecent and lewd activity encouraged by Storyville in the leased premises did not violate Section 2.01(c) of the sub-lease which restricted “burlesque-type,” “striptease,” and “adult entertainment” acts, based on the district court’s finding that such provision was to prevent the operation of a strip club. Section 2.01(c) reads as follows:
The following uses shall be prohibited in the leased premises at all times: burlesque-type, strip tease, or adult-oriented entertainment, the sale of merchandise bearing an obscene or a sexually suggestive message or artwork, a t-shirt shop, souvenir shop or adult establishment (all as defined in the Comprehensive Zoning ordinance of the City of New Orleans) and fast food restaurant; provided however, tenant may offer for sale in the leased premises memorabilia related to tenant’s operations, including clothing items which are sold at similar entertainment clubs. Nothing contained in this paragraph should be construed so as to expand these uses permitted in the leased premises which shall be limited to those set forth in Section 1.01(1).
When a court makes an interpretation based upon facts that are observed at the trial, that determination is subject to manifest error review. See New Orleans Jazz and Heritage Foundation, Inc. v. Kirksey, 2009-1433 (La.App. 4 Cir. 5/26/10), 40 So.3d 394. Appellate courts may only disturb a trial court’s findings |7of fact that are manifestly erroneous or clearly wrong. Bowen v. Smith, 2003-0432, 2003-1562 (La.App. 4 Cir. 9/8/04), 885 So.2d 1. In the instant case, the court viewed video surveillance taken by 800 Canal Street, listened to the testimony of the witnesses regarding the activity inside of the premises, observed photographs of policy signage that Storyville placed in the leased premises, and personally visited both the hotel and the Bourbon Cowboy. Accordingly, when the trial court rendered a factual determination that Storyville and its sub-tenants did not violate Section 2.01(c) based upon a reasonable interpretation and the actual evidence viewed at trial, it cannot be said that the court’s ruling was clearly wrong or manifestly erroneous. Even if Storyville had been in violation of Section 2.01(c), Section 11.01 of the lease between the parties provides the tenant with a thirty day period to cure any alleged default. The trial court found that if Storyville had engaged in activity viola-tive of Section 2.01(c), it had been cured.

800 Canal Street’s Attorneys’ Fees

In its third assignment of error, 800 Canal Street asserts that the trial court erred by not awarding it attorney fees and expenses under the sub-lease even though it established a breach by Storyville which was recognized by the trial court. Section 11.05(a) of the lease states:
In case suit shall be brought, or an attorney shall be employed, for recovery or possession of the Leased Premises, for the recovery of Rent or for the enforcement of, or because of the breach of, any covenant herein contained on the part of Tenant to be kept or performed, and a breach shall be established, Tenant shall pay to Landlord all costs and expenses incurred, including reasonable attorney fees.
800 Canal Street was unsuccessful in its attempts to evict Storyville and the subtenants. However, 800 Canal Street contends that even though it was not | ¡^successful in having the defendants evicted, it is entitled to attorney fees because the trial court provided Storyville and the *964 subtenants had 30 days to remove the mechanical bull. The problem with 800 Canal Street’s argument is that it never provided Storyville or the sub-tenants with notice and opportunity to cure any alleged zoning violation as required by the lease. This Court has held that no breach occurs when action is remedied within a curative period. See Sands v. McConnell, 426 So.2d 218 (La.App. 4 Cir.1982). In the instant case, the mechanical bull was removed within 30 days of the trial court’s judgment. Therefore, any breach was cured. Accordingly, we find no error in the trial court’s failure to award attorney fees and expenses to 800 Canal Street.

Mechanical Bull

In its first assignment of error, Storyville asserts that the trial court committed legal error in ordering that the mechanical bull in the leased premises had to be removed. Storyville reasons that this ruling was based on the February 9, 2010 correspondence and post-trial discovery deposition testimony of Paul May (the Director of the Office of Safety and Permits), which are both hearsay. Although a trial court has original jurisdiction to review determinations made by the Board of Zoning Adjustments, allegations of zoning violations may not be considered by a trial court as a matter of original jurisdiction. See Curran v. Board of Zoning Adjustments Through Mason, 580 So.2d 417, 418 (La.App. 4 Cir.1991), writ denied, 584 So.2d 679 (La.1991) (citing Gertler v. City of New Orleans, 346 So.2d 228, 233 (La.App. 4 Cir.1977)); La. R.S. 33:4727. In the instant case, no formal zoning proceedings occurred. Accordingly, the trial court erred in finding that the mechanical bull constituted a zoning violation and in ordering the removal of the mechanical bull from the premises.
| ^Storyville ⅛ Attorneys ’ Fees
In its second assignment of error, Storyville asserts that it and the sub-tenants should have been awarded attorney fees given that 800 Canal Street was unsuccessful in its questionably timed attempts to evict Storyville and the subtenants. Section 11.05(B) of the sub-lease provides:
In case suit shall be brought, or an attorney shall be employed, for the enforcement of, or because of the breach of, any covenant herein contained on the part of the Landlord to be kept or performed, and a breach shall be established, Landlord shall pay to Tenant all costs and expenses incurred, including reasonable attorneys’ fees.
The district court did not enter any judgment against 800 Canal Street in its judgment on eviction. Instead, the district court did not evict Storyville, but ordered that Storyville had thirty days to remove the mechanical bull from the leased premises. Although Storyville asserted an affirmative claim against 800 Canal Street for disturbance of its peaceful possession in the suit it filed, that suit was dismissed on the grounds of lis pendens. Accordingly, there was no adverse judgment against 800 Canal Street for disturbance of Story-ville’s peaceful possession. Therefore, we find no error in the trial court’s refusal to award attorney fees to Storyville and the sub-tenants.

Lis Pendens

In its final assignment of error, Storyville contends that the trial court committed legal error in granting 800 Canal Street’s exception of lis pendens. Louisiana Code of Civil Procedure Article 531 provides:
When two or more suits are pending in a Louisiana court or courts on the same transaction or occurrence, between the same parties in the same capacities, the *965 defendant may have all but the first suit dismissed by excepting thereto as provided in Article 925. When the defendant does not so except, the plaintiff may continue the prosecution of any of the suits, but the first final judgment rendered shall be conclusive of all.
| ipLa. C.C.P. art. 5B1.
In the instant case, we have two suits pending in a Louisiana court; the suits arise from the same transaction or occurrence; and the suits are between the same parties in their same capacities. Accordingly, the trial court did not err in granting 800 Canal Street’s exception of lis pendens.
CONCLUSION
For the foregoing reasons, we affirm the judgment of the trial court with the exception of the trial court’s ordering the removal of the mechanical bull from the premises, which we reverse.
AFFIRMED IN PART AND REVERSED IN PART

. The establishment appears to have been a version of Urban Cowboy meets Blazing Saddles on Bourbon Street.

. Hereafter, we will use Storyville to refer to Storyville District New Orleans, L.L.C. and the sub-tenants collectively.

. The majority of the litigation in this case was presided over and ruled on by "Pro Tem Judge” James Williams. The cross motions for attorney fees were the only matters before and ruled on by the Honorable Paulette Irons.